1

2

3

4

5

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7

JOHN S. DIEGO,

8

Plaintiff,

No.  4:16-CV-05021-RHW

9

v.

10

NANCY A. BERRYHILL
(PREVIOUSLY COLVIN),
Acting Commissioner of Social
Security, [1]

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND REMAND FOR
FURTHER PROCEEDINGS**

11

12

13

Defendant.

14

15

16

17

18

Before the Court are the parties' cross-motions for summary judgment, ECF
Nos. 20 & 25. Mr. Diego brings this action seeking judicial review, pursuant to 42
U.S.C. § 405(g), of the Commissioner's final decision, which denied his
application for Disability Insurance Benefits and Supplemental Security Income
under Titles II & XVI of the Social Security Act, 42 U.S.C §§ 401-434 & 1381-

19

20

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on
January 20, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil
Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the
defendant in this suit. No further action need be taken to continue this
suit. 42 U.S.C. § 405(g).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS ~ 1**

1383F.  After reviewing the administrative record and briefs filed by the parties,

the Court is now fully informed. For the reasons set forth below, the Court

**GRANTS** Plaintiff's Motion for Summary Judgment and **REMANDS** for further

proceedings.

## I.    Jurisdiction

Mr. Diego filed concurrent applications for Disability Insurance Benefits

under Title II and Supplemental Security Income under Title XVI on October 7,

2009. AR 137-43.  His alleged onset date is July 1, 2002. AR 137. His application

was initially denied on January 11, 2010, AR 69-71, and on reconsideration on

February 25, 2010, AR 77-78.

A hearing with Administrative Law Judge ("ALJ") Mattie Harvin-Woode

occurred on March 24, 2011. AR 27-64. On April 25, 2011, ALJ Harvin-Woode

issued a decision finding Mr. Diego ineligible for disability benefits under Titles II

and XVI. AR 8-26. The Appeals Council denied Mr. Diego's request for review on

September 20, 2012, AR 1-5.

Mr. Diego timely filed an action challenging the denial of benefits in the

United States District Court for the Eastern District of Washington on October 16,

2012. AR 830. Magistrate Judge Victor E. Bianchini granted Mr. Diego's motion

for summary judgment and remanded the case for further proceedings on May 5,

2014. AR 838-59. Magistrate Judge Bianchini found that ALJ Harvin-Woode

1    erroneously discounted the seriousness of Mr. Diego's mental health symptoms

2    based on his failure to follow treatment recommendations, which, combined with

3    new material evidence in the form new subsequent opinions by Drs. Steven

4    Johansen, PhD, and N.K. Marks, PhD, provided basis for remand. AR 853-54. The

5    second ALJ was instructed on remand to "consider what weight to assign these

6    opinions, if any, and revise the RFC determination (and vocational expert

7    hypothetical) accordingly." AR 857.

8         In response, the Appeals Council vacated the final decision of the

9    Commissioner of Social Security and remanded the case to a new ALJ for further

10   proceedings consistent with Magistrate Judge Bianchini's order. AR 866-67. Prior

11   to receiving a decision on his pending claim, Mr. Diego filed a new claim for

12   supplemental security income under Title XVI on October 26, 2012, which the

13   Appeals Council deemed duplicative and instructed the new ALJ to consolidate the

14   claims. *Id.*

15        Mr. Diego was granted a new hearing with ALJ R.J. Payne on February 4,

16   2015, AR 740-79, a supplemental hearing was held on April 13, 2015, AR 780-

17   827. On August 11, 2015, the ALJ issued a decision finding Mr. Diego ineligible

18   for disability benefits under the consolidated claims. AR 680-91. The Appeals

19   Council denied Mr. Diego's request for review on February 9, 2016, AR 651-60,

20   making ALJ Payne's ruling the "final decision" of the Commissioner.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS ~ 3**

1    Mr. Diego timely filed the present action challenging the denial of benefits

2    on February 24, 2016. ECF No. 3. Accordingly, Mr. Diego's claims are properly

3    before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

5    The Social Security Act defines disability as the "inability to engage in any

6    substantial gainful activity by reason of any medically determinable physical or

7    mental impairment which can be expected to result in death or which has lasted or

8    can be expected to last for a continuous period of not less than twelve months."  42

9    U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be

10   under a disability only if the claimant's impairments are of such severity that the

11   claimant is not only unable to do his previous work, but cannot, considering

12   claimant's age, education, and work experience, engage in any other substantial

13   gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

14   1382c(a)(3)(B).

15   The Commissioner has established a five-step sequential evaluation process

16   for determining whether a claimant is disabled within the meaning of the Social

17   Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v.*

18   *Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

19   Step one inquires whether the claimant is presently engaged in "substantial

20   gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY**
**JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS ~ 4**

activity is defined as significant physical or mental activities done or usually done for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§ 404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 & 416.908-09.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS ~ 5**

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.*

*Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ.  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9ᵗʰ Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld").  Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115.  The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here.  Mr. Diego was born in 1962. AR 689. He has at least a high school education and previously worked as a project engineer and a construction superintendent. *Id.*

Mr. Diego sustained a significant work injury in June 2002 that affected his eyes. AR 683. The accident resulted in a detached retina and blindness in his right eye. *Id.* His left eye is extremely myopic and requires a soft contact lens with a very high prescription. *Id.* The accident also resulted in depression and anxiety, particularly in crowded places. *Id.*

## V.    The ALJ's Findings

The ALJ determined that Mr. Diego was not under a disability within the meaning of the Act from July 1, 2002, through the date of the decision. AR 680-91.

**At step one**, the ALJ found that Mr. Diego had not engaged in substantial gainful activity since July 1, 2002 (citing 20 C.F.R. §§ 404.1571 *et seq.* & 416.971 *et seq.*). AR 682.

**At step two**, the ALJ found Mr. Diego had the following severe impairments: loss of vision in the right eye with diminished vision in the left eye; depressive disorder; and anxiety disorder (citing 20 C.F.R. §§ 404.1520(c) & 416.920(c)). AR 683.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS ~ 8**

At **step three**, the ALJ found that Mr. Diego did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 683-84.

At **step four**, the ALJ found Mr. Diego had the following residual function capacity: He can "perform a full range of work at all exertional levels but with the following nonexertional limitations: he must never climb ladders, ropes, or scaffolds. He must also avoid work around temperature extremes, at unprotected heights, with hazardous machinery, and work requiring commercial driving. [He] is unable to do a job requiring exposure to excessive dust; requiring good bilateral depth perception; requiring acute depth perception, such as working with small parts; or requiring bilateral peripheral visions. [Mr. Diego] is able to understand, remember, and carry out simple and complex work instructions. He can have no contact with the general public, and he would perform best at jobs that are repetitive and straight-forward with little change. He would do best in jobs where the instructions are clear and routine, and he is unable to travel alone or independently. [He] has physical and mental symptomatology, including pain, for which he takes prescription medication; however, despite the level of pain and/or any side effects of the medications, [Mr. Diego] would be able to remain reasonably attentive and responsive in a work setting and would be able to carry out normal work assignments satisfactorily." AR 684.

1    The ALJ determined that Mr. Diego is unable to perform his past relevant

2    work. AR 689.

3        At **step five**, the ALJ found that in light of his age, education, work

4    experience, and residual functional capacity, there are other jobs that exist in

5    significant numbers in the national economy that Mr. Diego can perform. AR 689-

6    90.

### VI.    Issues for Review

8        Mr. Diego argues that the Commissioner's decision is not free of legal error

9    and not supported by substantial evidence. Specifically, he argues the ALJ erred

10    by: (1) failing to give specific, clear, and convincing reasons for rejecting Mr.

11    Diego's report that he was unable to wear his contact lens for more than a few

12    hours at a time; (2) failing to address the opinion of Dr. Marks; and (3) failing to

13    get clarification from the vocational expert regarding the apparent conflict between

14    the *Dictionary of Occupational Titles*, the *Selected Characteristics of Occupations*,

15    and the vocational expert's testimony about the jobs Mr. Diego can perform. ECF

16    No. 20 at 2.

### VII.    Discussion

**A. The ALJ did not err with regard to Mr. Diego's credibility, including**

**his testimony regarding his ability to tolerate his contact lens.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS ~ 11**

The ALJ noted that among Mr. Diego's testimony were comments about the limitations surrounding his contact lens and his need to remove it two to three times a day to rest his eye. AR 685. In totality, ALJ Payne found that Mr. Diego's symptom testimony was not entirely credible, which includes his statements regarding his tolerance of his contact lens. *Id.*

ALJ Payne notes that his visual acuity has remained generally stable, *id.*, which is supported by the record. *See e.g.* AR 621, 1065, 1252. Additionally, the ALJ noted that Mr. Diego can sometimes drive and travel to Spain. AR 685. These activities, however, all go toward his ability to see, which is not in dispute. The ALJ provides no references to information in the record that counters Mr. Diego's alleged need to remove the contact periodically throughout the day to relieve his eye from the discomfort caused by the lens.

The record, however, also does not support Mr. Diego's assertions. For example, on August 3, 2011, Mr. Diego reported to Dr. Samuel Barloon, M.D., that he had irritation in his left eye "for a few days," which "occurs once a month," a condition Mr. Diego believed to be "due to the soft contacts." AR 634. While this shows irritation, it is not consistent with his report that he cannot wear the contact on his left eye for more than a few hours at a time, or that it affects him every day. When Mr. Diego visited Dr. Richard Harrison, O.D., in April 2014, he did not appear to complain of discomfort, as one would expect with the level of

1   impairment Mr. Diego alleges. AR 1248-54. Both of these issues were discussed at

2   Mr. Diego's hearings, demonstrating that ALJ Payne was aware of them. AR 760-

3   66. Further, medical expert Dr. Philip Gerber, M.D., was able to review the full

4   medical record and testified at Mr. Diego's second hearing that he saw no evidence

5   that Mr. Diego would need to take his contact out multiple times per day. AR 761-

6   62.

7           The ALJ performed an adequate assessment of Mr. Diego's credibility and

8   provided multiple reasons for this determination. While there is not a specific

9   reference to the contact lens comfort, the ALJ properly evaluated Mr. Diego's

10  overall credibility and determined his statements were not entirely credible. This

11  analysis is supported by the record. Further, even if this omission were in error, the

12  error would be harmless because the record also does not support Mr. Diego's

13  claims regarding his need to frequently remove his contact lens.

14  **B.  The ALJ erred by failing to consider the opinion of Dr. Marks.**

15          Dr. Marks performed a psychological evaluation of Mr. Diego on February

16  20, 2012. AR 651-56. Dr. Marks diagnosed Mr. Diego with post-traumatic stress

17  disorder, major depressive disorder, and panic disorder with agoraphobia. AR 655.

18  Dr. Marks opined that "it would be extremely difficult for him to maintain any sort

19  of employment due to his lack of vision, and his extreme anxiety with leaving his

20

home." *Id.* Mr. Diego's function, Dr. Marks further believed, would be limited in unfamiliar environments, which could trigger panic attacks. *Id.*

Dr. Marks's opinion was submitted after the first hearing with ALJ Harvin-Woode. Magistrate Judge Bianchini, on remand, noted that new evidence created a "reasonable possibility that the ALJ would reach a different decision if given the opportunity to consider it." AR 852. This new evidence consisted of both Drs. Marks's and Johansen's opinions. AR 851-53. On remand, the Appeals Council instructed the second ALJ to conduct further proceedings "consistent with the order of the court." AR 866. This, therefore, would require ALJ Payne to have considered both Drs. Johansen's and Marks's opinions, but only Dr. Johansen's opinion was mentioned by ALJ Payne. *See* AR 680-91.

The rule of mandate "provides that any district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it." *Stacy v. Colvin*, 825 F.3d 563, 568 (9th Cir. 2016) (quoting *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) (internal quotations omitted)). The rule of mandate applies to Social Security cases. *Stacy*, 825 F.3d at 567.

An ALJ need not provide extensive conclusions, but he or she must provide some reasoning to allow the court to "meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc.*

*Sec. Admin.*, 775 F.3d 1090, 1103. ALJ Payne does not reference Dr. Marks's opinion at all, which is error.

The Commissioner argues that this error was harmless because an additional medical opinion regarding Mr. Diego's mental state was added following Magistrate Judge Bianchini's order. ECF No. 25. The opinion cited is that of Dr. Margaret Moore, Ph.D., a non-examining doctor who reviewed the record and provided an opinion, of which ALJ Payne afforded significant weight. *Id.*

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830.

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

1    The Court does not find that the omission of an examining doctor's opinion

2    is harmless error when presented only with a conflicting opinion of a non-

3    examining doctor. In this case, *no* reasons, much less specific and legitimate ones,

4    were provided for rejecting Dr. Marks's opinion. Even if, as the Commissioner

5    asserts (without support from the decision), ALJ Payne rejected Dr. Marks's

6    opinion because of that of Dr. Moore, ALJ Payne was still required to provide

7    specific and legitimate reasons for doing so. The failure to address Dr. Marks's

8    opinion is reversible error.

9    **C. The Court need not reach the issue of conflict between the vocational**

10    **expert's testimony, the *Dictionary of Occupational Titles,* and the**

11    ***Selected Characteristics of Occupations*.**

12    At step five, the burden is on the Commissioner to demonstrate that the

13    claimant can perform other substantial gainful activity and that a significant

14    number of jobs exist in the national economy that the claimant can perform.

15    *Beltran*, 676 F.3d at 1206. To sustain this burden, the Commissioner relied on the

16    testimony of vocational expert Daniel McKinney. AR 812-26. Mr. McKinney

17    testified that an individual with Mr. Diego's residual functional capacity could

18    perform the jobs of garment sorter, housekeeper, warehouse checker, packing line

19    worker, industrial cleaner, and assembler. AR 817-19. Mr. Diego argues that these

20    jobs' definitions in the *Dictionary of Occupational Titles* and the *Selected*

*Characteristics of Occupations* conflict with the hypothetical posed to Mr.

McKinney. ECF No. 20 at 11. The Court need not reach this issue, however, as the

Court find that a reasonable possibility that the step five analysis may have been

different if Dr. Marks's opinion had been properly considered.

### D. Remedy

The Court has the discretion to remand the case for additional evidence and

findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award

benefits if the record is fully developed and further administrative proceedings

would serve no useful purpose. *Id.* Remand is appropriate when additional

administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d

759, 763 (9th Cir. 1989). In this case, the Court finds that further proceedings are

necessary for a proper determination to be made.

Specifically, the ALJ shall consider the opinion of Dr. Marks. The ALJ shall

conform to the legal standards set forth in this Circuit regarding the opinions of

examining doctors. Once properly considering the opinion, the ALJ shall

recalculate the residual functional capacity, considering all impairments, and then

evaluate, based on this updated residual functional capacity, Mr. Diego's ability to

perform past relevant work, as well as work available in the national economy.

//

//

# VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence or free of legal error. Accordingly, **IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 25,** is **DENIED.**

3.  The District Court Executive is directed to enter judgment in favor of Plaintiff.

4. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 27th day of January, 2017.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge